IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 15, 2020

## CYNTHIA ANNE KNOP v. AARON CHARLES KNOP

**Appeal from the Chancery Court for Greene County**
**No. 20150249      Douglas T. Jenkins, Chancellor**

———————————————————

**No. E2019-01035-COA-R3-CV**

———————————————————

This appeal concerns a post-divorce motion to show cause filed by wife against husband for unpaid child support, extracurricular expenses and medical expenses for the children and a failure to divide certain financial accounts of the parties. Additionally, husband sought credit for premiums he had paid post-divorce toward a life insurance policy awarded to wife as part of the division of marital property. Given the nature of the relief being sought, the parties entered into an agreed order referring the matter to a special master. A hearing was held before the special master who subsequently filed his findings and recommendations with the trial court. Husband filed objections in the trial court to the special master's findings. Following a hearing on husband's objections, the trial court approved the special master's findings and recommendations in their entirety and adopted them as the judgment of the court. The husband appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and W. NEAL MCBRAYER, JJ., joined.

Thomas C. Jessee Johnson City, Tennessee, for the appellant, Aaron Charles Knop.

Linda Thomas Woolsey, Greenville, Tennessee, for the appellee, Cynthia Anne Knop.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

Aaron K. ("Husband") and Cynthia K. ("Wife") were married for sixteen years and have two minor children (collectively, "the Children"), ages seventeen (17) and

eleven (11). The parties were both dentists and practiced together, until Wife became disabled, at ABC Family Dentistry, a practice they jointly owned. Following her disability, Wife continued to actively manage the office even though she was unable to practice dentistry herself. On July 13, 2015, Wife filed a Complaint for Absolute Divorce in the Greene County Chancery Court (the "trial court"), alleging irreconcilable differences. On June 8, 2017, the parties executed a Marital Dissolution Agreement (the "MDA") and a Permanent Parenting Plan (the "Parenting Plan"), both of which were subsequently approved and adopted by the trial court in its June 8, 2017 Judgment divorcing the parties.

Pursuant to the parties' MDA, Husband was awarded exclusive ownership of ABC Family Dentistry and was made "solely responsible for all debts, obligations, taxes, fines, assessments, and other liabilities associated with the said business and the income generated by said business in 2017." The MDA also provided that the parties' financial accounts, including the joint checking and savings account associated with ABC Family Dentistry, would be divided equally. Regarding the business's checking and savings accounts, the MDA provided that the amount to be divided would be the remaining balance in the accounts following any reduction for any outstanding checks written or withdrawals made prior to June 8, 2017. Pursuant to the Parenting Plan, Husband's child support obligation was set at $3,000.00 per month, beginning June 1, 2017. Additionally, the Parenting Plan provided that the parties would divide equally all costs associated with the Children's extracurricular activities, and that they were to exercise joint decision-making authority with regard to the Children's non-emergency healthcare. Husband, however, was responsible for all of the Children's uncovered reasonable and necessary medical expenses. The Parenting Plan further provided that the parties would "equally divide the cost of providing a vehicle (up to $15,000 in value) for their children when each child obtains her/his driver's license, and they shall equally divide the cost of providing full-coverage insurance on said vehicle until each child graduates from college."

On March 2, 2018, Wife filed a post-divorce Motion to Show Cause against Husband for unpaid child support, extracurricular expenses and medical expenses for the Children and a failure to divide certain financial accounts of the parties. Because of the nature of Wife's allegations, the parties entered into an agreed order for the trial court to refer all of the issues raised in Wife's motion to a special master. A hearing was held before the Special Master on November 2, 2018. On January 23, 2019, the Special Master issued his Findings and Recommendations. Husband filed his Objections to the Special Master's findings on January 31, 2019. On April 10, 2019, the trial court held a hearing on the objections, and, on May 16, 2019, it entered its final order, adopting the Special Master's Report *in toto* as the judgment of the court. Husband timely filed this appeal.

**ISSUES PRESENTED**

Husband raises five issues on appeal, which we rephrase as follows:

1. Whether the trial court erred in determining that Husband was not entitled to a credit for one half (1/2) of the tax liability and one half (1/2) of the salary paid to the associate dentist when such expenses were incurred and due and payable prior to the division of the business accounts.
2. Whether the trial court erred in determining that Husband was not entitled to a dollar-for-dollar credit for the premiums he paid for the life insurance policy, which was awarded to Wife.
3. Whether the trial court erred in determining that Husband was responsible for one half (1/2) of the Children's medical bills.
4. Whether the trial court erred in determining that Husband was not entitled to a credit for the difference between the costs of the automobile insurance obtained by Wife and that which Husband could have provided had he been consulted.
5. Whether the trial court erred in determining that Husband must pay $3,000.00 in child support for June 2017.

## STANDARD OF REVIEW

At the outset, we note that the post-divorce issues in this matter were first heard by a special master, and the trial court adopted the Special Master's findings and conclusions *in toto* as the judgment of the court. Although the parties correctly state in their briefs the standard of review regarding concurrent findings of fact by a special master and a trial court, there appears to be a misunderstanding as to the applicability of this standard under the facts of this case. This Court has outlined the standard of review applied in cases where the trial court referred the matter on appeal to a special master:

> The standard of review in situations involving the findings of a special master is set forth in Tenn. Code Ann. § 27-1-113: "Where there has been a concurrent finding of the master and chancellor, which under the principles now obtaining is binding on the appellate courts, the court of appeals shall not have the right to disturb such finding."

*Bradley v. Bradley*, No. M2009-01234-COA-R3-V, 2010 WL 2712533, at *6 (Tenn. Ct. App. July 8, 2010). Under this standard, concurrent findings of fact by a special master and a trial court are conclusive and cannot be overturned on appeal. *Manis v. Manis*, 49 S.W.3d 295, 301 (Tenn. Ct. App. 2001). Thus, "[t]he trial court's order referring certain matters to the Special Master, the Special Master's report, and the trial court's order on the report affect our standard of review on appeal." *Bradley*, 2010 WL 2712533, at *6 (citing *Pruett v. Pruett*, No. E2007-00349-COA-R3-CV, 2008 WL 182236, at *4 (Tenn. Ct. App. Jan. 22, 2008); *Dalton v. Dalton*, No. W2006-00118-COA-R3-CV, 2006 WL 3804415, at *3 (Tenn. Ct. App. Dec. 28, 2006)).

However, a concurrent finding is not conclusive "where it is upon an issue not properly referred to a special master, where it is based upon an error of law or a mixed question of fact and law, or where it is not supported by any material evidence." *Bradley*, 2010 WL 2712533, at *6 (citing *Manis*, 49 S.W.3d at 301). Accordingly, while concurrent findings of fact are binding on the reviewing court if supported by any material evidence, this rule does not apply to questions of law or mixed questions of law and fact. *Bubis v. Blackman*, 435 S.W.2d 492, 498 (Tenn. Ct. App. 1968). As this Court has noted,

> A presumption of correctness does not attach to mixed questions of fact and law. Although a presumption of correctness attaches to the trial court's findings of fact, we are not bound by the trial court's determination as to the legal effect of its factual findings, nor by its determination of a mixed question of law and fact. Our standard of review of rulings on mixed questions of fact and law is de novo with a presumption of correctness extended only to the trial court's findings of fact.

*Pierce v. Pierce*, No. E2007-01403-COA-R3-CV, 2008 WL 2557363, at *6 (Tenn. Ct. App. June 26, 2008). "[A]ppellate courts have 'great latitude to determine whether findings as to mixed questions of fact and law made by the trial court are sustained by probative evidence on appeal.'" *Hardin v. Hensley-Hardin*, No. E2014-01506-COA-R3-CV, 2015 WL 9271557, at *6 (Tenn. Ct. App. Dec. 18, 2015) (quoting *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995)). Further, "[w]hen the trial court's findings are based solely on documentary evidence . . . the appellate court is in the same position as the trial court and is just as capable of reviewing the evidence and drawing its own conclusions." *Peters-Asbury v. Knoxville Area Transit, Inc.*, 544 S.W.3d 354, 359 (Tenn. Ct. App. 2016) (citing *Kelly v. Kelly*, 445 S.W.3d 685, 693 (Tenn. 2014)).

**DISCUSSION**

**A.  Husband's First Issue**

In her Motion to Show Cause, Wife asserted that, pursuant to the provisions of the parties' MDA,

> the parties were to equally divide the funds as listed for the accounts that were specified on Exhibit A, which was attached to said Judgment, subject to reducing the accounts by any outstanding checks or withdrawals. The Mother would show that the Father has willfully failed and/or refused to divide said accounts.

As is relevant to this issue, the accounts referred to by Wife consisted of the checking and

- 4 -

savings accounts associated with ABC Family Dentistry. At the hearing before the Special Master, however, Husband argued that, because Wife purposely delayed both the payment of an associate dentist's salary for June 2017, who was employed by the practice, as well as the practice's quarterly tax liability, he should be given a credit for one half of these payments.

The Special Master's found, pursuant to the language in the MDA, that Husband was not entitled to a credit for the business's tax liability and the associate dentist's salary. Specifically, the Special Master found as follows:

> The Special Master finds, based upon the provisions contained in paragraph four (4) [of the MDA], that Defendant is not entitled to a credit for payment of the dental practice associate's salary for June 2017 nor for the tax liability. It is the opinion of the Special Master that although said debts were due in June, that they were not due and payable prior to June 8, 2017 and that said debts were specifically contemplated in the parties' agreed upon division of financial account[.]

The trial court adopted the findings of the Special Master on this issue as a judgment of the court.

While the Special Master's finding that the payments made by Husband "were not due and payable prior to June 8, 2017" is a factual one, the finding that Husband "is not entitled to a credit" for such payments is a question of law. In fact, the Special Master noted that, in making such a finding, "[s]pecial consideration was given regarding the provisions of paragraph four (4) and paragraph seven (7)" of the parties' MDA.[1] "A mixed question of law and fact arises where the construction of a written agreement depends on extrinsic facts as to which there is a dispute." *State ex rel. Flowers v. Tennessee Trucking Ass'n Self Ins. Group Trust*, 209 S.W.3d 595, 599 (Tenn. Ct. App. 2006). Accordingly, because the Special Master's findings are based upon a mixed question of fact and law, such findings are not conclusive or binding on this Court. Therefore, we decline to apply the standard of review set forth in Tennessee Code Annotated section 27-1-113 and instead review the trial court's concurrence with the findings of the Special Master on this issue *de novo* with no presumption of correctness. *See Hardin*, 2015 WL 9271557, at *6; *see also Lambert v. Lambert*, No. M2013-01885-COA-R3-CV, 2014 WL 3563630, at *6 (Tenn. Ct. App. July 18, 2014) (declining to apply the standard of review set forth in Tennessee Code Annotated section 27-1-113 because the issue referred to the special master was "essentially a question of law").

The parties' MDA provides that Husband "shall be solely responsible for *all debts,*

---

[1] Moreover, the Special Master noted that he had to "reconcile" the two provisions in order to make his finding

*obligations, taxes, fines, assessments, and other liabilities*" associated with ABC Family Dentistry (emphasis added). The MDA also provides that Husband and Wife shall equally divide the checking and savings accounts for the business, but that the balance would be "reduced by any outstanding checks written or withdrawals made *prior to June 8, 2017*." (emphasis added). From our review of the record, there is sufficient probative evidence to sustain the Special Master's findings—adopted by the trial court—that (1) the tax liability and the associate dentist's salary, while due in June, were not yet due and payable prior to June 8, 2017[2] and (2) no checks were written and no withdrawals were made prior to June 8, 2017 reflecting such payments.[3] Pursuant to the clear language of the parties' MDA, Husband was "solely responsible" for these payments. Accordingly, based upon our own independent review of the record and the legal issue on appeal, we decline to disturb the trial court's ruling on this issue and affirm the decision of the trial court that Husband is not entitled to a one-half credit for the payments made subsequent to June 8, 2017.

## Husband's Second Issue

As part of the division of marital property in the MDA, Wife had been awarded a whole life insurance policy on her life with Northwestern Life Insurance Co. Husband argues on appeal that, because he continued to pay the premiums on Wife's whole life insurance policy from June 2017 to November 2018, he should be given a dollar-for-dollar credit for the $44,541.19 worth of premiums he paid during that time period. The Special Master denied Husband a dollar-for-dollar credit for his post-divorce contributions towards the policy but did give him a credit for 50% of the increase in the cash value of the whole life policy during the time period, stating as follows:

> [T]he Special Master does find and recommend that Aaron Knop be given "credit" in some measure for the increase in the cash value of the policy during those periods of time in which he paid the premium. In the opinion of the Special Master there can be no doubt that payment of the premium by Defendant benefitted the Plaintiff as it increased the actual cash value of the plan by $36,686.78. That had Defendant Aaron Knop not paid said premium then the policy could have lapsed. The benefit of hindsight allows us to see that as thankfully Dr. Cynthia Knop did not pass away during said time period, there was no claim to be filed or benefit

---

[2] Wife testified that the tax liability was not due and payable until June 15, 2017. Husband offered no testimony as to why this payment was or should have been due and payable prior to June 8, 2017. Similarly, Husband offered no proof of a due date for payment of the associate dentist's salary. As this Court has stated, "[e]ven in the context of such a mixed question of law and fact, the trial court's findings are accorded strong deference when they are based on witness testimony[.]" *Pierce*, 2008 WL 2557363, at *6.

[3] The business ledger reflects that no such payments were made from June 1, 2017 to June 8, 2017.

paid.[4]  Thus, the only benefits were the increase in cash value and ability for Cynthia Knop to retain or convert the policy.

The Special Master further finds that upon substantial reflection and consideration that it would result in unjust enrichment or inequity to provide that the Defendant should get a credit for the dollar for dollar increase in the cash value of the life insurance policy for which he made the payments because Plaintiff was awarded and credited that increase in cash value as a portion of her division of the category two (2) retirement accounts as she was awarded the Northwestern Mutual Variable Life Insurance Policy . . . . Defendant should not benefit from the credit of the full amount including the increase of the policy being awarded to the Plaintiff and also receive an offset against his retained accounts.  The Special Master thus finds that it would be equitable for Defendant to receive credit for fifty (50%) percent of the increase in the cash value of the whole life insurance policy which Plaintiff is receiving[.]

The trial court adopted the findings of the Special Master on this issue as a judgment of the court.

The finding that Wife's whole life insurance policy increased in cash value during the time Husband continued to pay the premiums is a factual one; however, whether Husband is entitled to a credit for the payment of the premiums or the increase in the policy's cash value is a question of law.  Accordingly, we decline to apply the standard of review set forth in Tennessee Code Annotated section 27-1-113 and instead review the trial court's concurrence with the findings of the Special Master *de novo* with no presumption of correctness.  *See Hardin*, 2015 WL 9271557, at *6.

As is relevant to this appeal, the record reflects that, at the time of the parties' divorce, the whole life insurance policy at issue had a cash value of $81,796.93 and that, by November 2018, the policy had a cash value of $118,453.71, reflecting an increase in cash value of $36,656.78.  On appeal, Husband argues that the trial court erred in refusing to give him a dollar-for-dollar credit for the $44,541.19 of policy premiums that he paid post-divorce to maintain the policy.  We disagree.  While the policy could have lapsed had Husband failed to pay the premiums, neither the MDA nor the Parenting Plan—or the policy itself—required Husband to continue to make the premium payments.  Accordingly, Husband's continued payments following the parties' divorce were entirely voluntary.  Further, Husband personally benefitted from paying the premiums because he was the sole beneficiary under the policy and, thus, would have received any benefits payable under the terms of the policy had Wife died prior to his

---

[4] Husband remained the sole beneficiary under Wife's policy of insurance during the entire time he paid the premiums referenced herein.

removal as beneficiary. Therefore, as a matter of law, Husband is not entitled to a credit for the payments that he voluntarily made and from which he derived a personal—albeit conditional—benefit.

However, this does not end the matter. In this case, the trial court adopted the Special Master's finding that "it would be equitable for [Husband] to receive credit for fifty (50%) percent of the increase in the cash value of the whole life insurance policy[.]" On appeal, Wife does not seek to set aside the trial court's affirmance of the Special Master's finding on this issue; rather, she seeks only affirmance of the trial court's decision.[5] From our careful review of Wife's appellate brief, she does not raise the issue of whether the trial court erred in granting Husband a credit for 50% of the increase in the cash value of the policy. Because Wife does not raise this as an issue on appeal, and based upon our own independent review of the record and the legal issue on appeal, we decline to disturb the trial court's ruling on this issue and affirm the decision of the trial court equally dividing between the parties the increase in the cash value of $36,656.78.[6] *See Lambert*, 2014 WL 3563630, at *8 ("Since Wife does not raise this as an issue on appeal, we must decline to award her relief she did not seek.").

## B. Husband's Third Issue

In her Motion to Show Cause, Wife argued that Husband had failed to make certain payments regarding the Children's medical bills. Specifically, Wife asserted that,

> pursuant to the provisions of the Permanent Parenting Plan, the Father is to pay for any uncovered reasonable and necessary medical expenses incurred by the parties' children, and is to reimburse the Mother for the cost to her of providing medical insurance on the parties' children. The Mother would show that the Father has willfully failed and/or refused to pay said expenses.

---

[5] In fact, at the hearing before the Special Master, the following exchange occurred:

> [Husband's counsel]: She's got the insurance, and she's got the accumulated value.
> [Wife's counsel]: We don't object to giving him credit for that against any accumulated value[.]

[6] We note that, in his findings—and in the trial court's concurrence therewith—the Special Master found that the whole life insurance policy had an increase in cash value of $36,686.78—which reflects an additional $30 increase when compared to this Court's own independent finding. Considering the fact that the Special Master's findings as to the cash value of the policy at the time of the parties' divorce and by November 2018 are the same as this Court's and are supported by the record, we conclude that the additional $30 in the Special Master's finding reflects a mere scrivener's error. As such, we decline to vacate this portion of the judgment, concluding that the Special Master intended to denote the increase in cash value of the whole life insurance policy to be $36,656.78.

At the hearing before the Special Master, Husband argued that, because of the untimeliness and manner in which Wife notified him of the Children's medical expenses and her failure to provide him with any explanation of benefits, he should not be responsible for reimbursing Wife for these expenses. In his report, the Special Master found the following:

> That Defendant is responsible for 100% of all medical bills incurred on June 12, 2017 and continuing through October 3, 2018 based upon the parties' prior agreement . . . . That with regard to the following specific medical bills: Hessee Creek Emergency Physicians 4/23/17, Hessee Creek Emergency Physicians 4/24/17, Laughlin Memorial Hospital 4/23/17, Laughlin Memorial Hospital 4/24/17, and Eastview Eye Care 5/10/17, these medical expenses pre-date the parties' agreement and divorce, thus the Special Master recommends that each party be equally responsible for the same. Thus, Plaintiff is responsible for $1,057.28 and Defendant is responsible for $1,057.28 (one half of total amount).

The trial court adopted the findings of the Special Master on this issue as a judgment of the court.

Again, this finding by the Special Master is based upon a mixed question of fact and law. Determining when and if certain medical expenses were paid is a factual finding. However, determining how and whether to divide such expenses among the two parties based on the provisions of the Parenting Plan and the MDA—as well as those expenses incurred prior to the parties' divorce or entering into the Parenting Plan and the MDA—is a question of law. Because the Special Master's findings on this issue—that (1) Husband is to be responsible for 100% of the Children's uncovered medical expenses incurred following the divorce and after the parties entered into the Parenting Plan and the MDA and (2) Husband and Wife are to be equally responsible for the medical expenses incurred prior to the divorce—are questions of law and not conclusive or binding on this Court, we decline to apply the standard of review set forth in Tennessee Code Annotated section 27-1-113 and instead review the trial court's concurrence with the findings of the Special Master on the issue *de novo* with no presumption of correctness. *See Lambert*, 2014 WL 3563630, at *6.

At the outset, we note that Husband does not take issue with the finding that he is "responsible for 100% of all medical bills incurred [post-divorce] on June 12, 2017 and continuing through October 3, 2018[.]" Rather, Husband simply asserts on appeal that "the trial court erred in determining that he was responsible for one-half of the children's medical expenses." Pursuant to the Special Master's findings and the trial court's adoption of the same, the only medical expenses for which Husband was made 50% responsible were the Children's uncovered, reasonable, and necessary medical expenses

that arose *prior* to the parties' divorce. Accordingly, as we perceive it, Husband's argument pertains only to those medical expenses that pre-dated the parties' divorce. However, after our review of Husband's argument, as well as the transcript of the hearing before the Special Master, it appears to this Court that all of Husband's proof presented on this issue pertains to Wife's alleged conduct *after* the parties' divorce. Husband argues that, although the Parenting Plan provides that the parties are "to exercise joint decision-making with regard to the children's non-emergency healthcare" and "to communicate with one another by email or text[,]" Wife "never contacted" him prior to making health care appointments for the Children and that she "never sent" him any medical bills or explanation of benefits for the Children's medical treatment. However, Wife's alleged failures to comply with the Parenting Plan do not relate back to the Children's medical expenses that arose *prior* to the parties' divorce. As such, we find Husband's issue without merit. Further, neither the Parenting Plan nor the MDA address the division of the medical expenses that arose prior to the parties' divorce. Without more,[7] and based on our own independent review of the record and the legal issue on appeal, we decline to disturb the trial court's ruling on this issue, and we affirm the decision of the trial court equally dividing the pre-divorce medical bills between the parties, with each being responsible for $1,057.28 (one-half (1/2) of the disputed medical bills).

### C.  Husband's Fourth Issue

Next, Husband argues on appeal that "[t]he trial court erred in refusing to provide [him] with a credit for the difference in the cost of the insurance that [Wife] obtained for the daughter's vehicle and the cost of insurance that [he] could have obtained for the vehicle, had he been consulted[.]" In her Motion to Show Cause, Wife asserted that

> pursuant to the provisions of the Permanent Parenting Plan[8], the parties are to equally divide the cost of providing a vehicle (up to $15,000.00 in value) for each child. The Mother would show that she has purchased a vehicle for the parties' daughter, at a time she was able to receive substantial discounts for the vehicle desired by the daughter. The Mother acknowledges that she spent more on the said vehicle than contemplated by the parties' agreement, but she is only asking that the Father be required to reimburse her in the amount of $7,500.00 as agreed upon by the parties.

---

[7] The record reflects a total of five medical bills that were accrued prior to the parties' divorce: two bills from Hessee Creek Emergency Physicians, on April 23 and 24, 2017, of $438.24 and $644.60, respectively; two from Laughlin Memorial Hospital, on April 23 and 24, 2017, of $231.79 and $779.92, respectively; and one from Eastview Eye Care, on May 10, 2017, of $20.00.

[8] As noted above, the Parenting Plan provided that the parties would "equally divide the cost of providing a vehicle (up to $15,000 in value) for their children when each child obtains her/his driver's license*, and they shall equally divide the cost of providing full-coverage insurance on said vehicle until each child graduates from college.*" (emphasis added).

At the hearing before the Special Master, Husband stipulated that he was responsible for reimbursing Wife in the amount of $7,500.00, as that was the maximum amount contemplated in the Parenting Plan. However, Husband argued that he should be given a credit for the difference in the cost of the automobile insurance Wife obtained and that which he argued he could have obtained from his automobile insurance carrier for the vehicle. The Special Master's gave Husband the opportunity to file a late filed exhibit to prove his argument, but Husband failed to do so. As a result the Special Master found that Husband was required to reimburse Wife for one-half the premium for the automobile insurance that Wife purchased. Specifically, the Special Master found as follows:

> Defendant asserts that the insurance premium on said vehicle is significantly higher than the insurance on a vehicle he would have recommended and/or agreed to purchase. Defendant also asserts that he believes the automobile insurance premium to be too expensive. Defendant was provided with the opportunity through the filing of a late filed Exhibit to provide the estimated expense of the automobile insurance premium on a vehicle that he would have been comfortable with and/or selected for the parties' minor daughter to possess and operate. However, there is no indication in the transcript or late filed Exhibits, or correspondence from counsel as to the estimated cost of an automobile insurance policy premium that Defendant asserts is reasonable and that he would agree to pay. Thus, in the absence of any estimated insurance cost from Defendant, the Special Master finds and recommends that Defendant be required to reimburse Plaintiff one-half of the total automobile insurance premiums[.]

The trial court adopted the findings of the Special Master on this issue as a judgment of the court.

While the finding that Husband failed to offer any proof of the difference in the cost of insurance policies is a question of fact, whether Husband is entitled to a credit equaling the difference in the cost of the policies—had there been one—is a question of law. Because the Special Master's finding that Husband is not entitled to such a credit is not conclusive or binding on this Court, we decline to apply the standard of review set forth in Tennessee Code Annotated section 27-1-113 and instead review the trial court's concurrence with the findings of the Special Master on the issue *de novo* with no presumption of correctness. *See Lambert*, 2014 WL 3563630, at *6.

After our own independent review of the record and the legal issue on appeal, we agree with the finding that Husband failed to submit any proof on the issue of whether or not he could have purchased automobile insurance at a lower premium than that purchased by Wife for daughter's vehicle, despite being given the opportunity to do so.

- 11 -

There is simply nothing in the record indicating that Husband submitted any proof as to the cost of automobile insurance policies that he could have obtained. Further, the Special Master afforded Husband an opportunity to furnish the same by submitting a late-filed exhibit, but Husband failed to do so. We, therefore, decline to disturb the trial court's ruling on this issue and affirm the decision of the trial court requiring Husband to reimburse Wife one-half the premium for daughter's automobile insurance.

### D. Husband's Fifth Issue

In her Motion to Show Cause, Wife asserted that, "pursuant to the provisions of the Permanent Parenting Plan, the Father is to pay child support in the amount of $3,000.00 per month" and that "Father has willfully failed and/or refused to pay child support as ordered by the Court and has incurred a significant arrearage." At the hearing before the Special Master, Husband argued that, from June 1 to June 8, 2017, he made certain payments that benefitted Wife and the Children and that such payments should offset his child support obligation for that month. The Special Master in finding that Husband was obligated to pay $3,000.00 in child support for June 2017, stated as follows:

> The Special Master finds pursuant to statutory provisions and case law in the State of Tennessee that absent a specific agreement by the parties, payment of other expenses cannot be credited towards a child support obligation once established . . . . The Special Master is of the opinion that although it may be equitable he cannot give Defendant credit for said amounts against the child support obligation. Defendant's argument that he should be given credit for the same, while thus well-reasoned, cannot be sustained subject to the law.

The trial court adopted the findings of the Special Master on this issue as a judgment of the court.

The existence and amount of child support arrearage is a question of fact, *Gaskins v. Fletcher*, 1989 WL 1229, at *2 (Tenn. Ct. App. Jan. 12, 1989), but whether an obligor parent is entitled to a credit to offset that arrearage is a question of law.[9] Because the Special Master's finding is based upon a mixed question of fact and law, we decline to apply the standard of review set forth in Tennessee Code Annotated section 27-1-113 and instead review the trial court's concurrence with the findings of the Special Master on the

---

[9] As this Court has previously noted, "it is well settled that non-custodial parents may be given credit against their child support obligation for payments made on behalf of their children if such payments are for necessaries that the custodial parent either failed to provide or refused to provide." *Peychek v. Rutherford*, No. W2003-01805-COA-R3-JV, 2004 WL 1269313, at *3 (Tenn. Ct. App. June 8, 2004). "[T]he nature of a credit 'recognizes that the obligor parent provided the support the court ordered in the first place.'" *Id.* at *4.

issue *de novo* with no presumption of correctness. *See Lambert*, 2014 WL 3563630, at *6.

The parties' Parenting Plan provides that Husband "shall pay to the Mother as regular child support the sum of $3,000.00 per month, beginning June 1, 2017, and due the 1st day of each month thereafter." It is undisputed that Husband did not pay the $3,000.00 in June 2017, as required by the Parenting Plan. Husband, however, asserts that, from June 1, 2017 to June 8, 2017, he paid $631.00 for the Children's health insurance and $1,887.00 for the mortgage on the marital home. Additionally, Husband asserts that Wife took $2,300.00 from the parties' joint account in order to pay her credit card. According to Husband, these payments—totaling $4,818.00—should offset his June 2017 child support obligation of $3,000.00.

In support of his argument, Husband cites to *Stewart v. Rowland*, where this Court awarded the father a credit on his child support obligation for monies that he had paid to the mother for the specific purpose of providing health insurance coverage for their child. *Stewart v. Rowland*, No. W2015-02147-COA-R3-CV, 2016 WL 3217887, at *7 (Tenn. Ct. App. June 2, 2016). There, the record reflected that, "from January 2013 until May 2015, Father paid Mother $66 per month for the child's insurance premiums, and Mother failed to provide health insurance for the child except through TennCare, which as discussed above did not satisfy her obligation to provide health insurance for the child." *Id.* at *6. Accordingly, we held that the father was entitled to a credit "for the time period Mother failed to provide health insurance other than TennCare." *Id.* at *7. While similar, the case presently before us is distinguishable from *Stewart*. In *Stewart*, the monies paid by the father to the mother were to be used to provide health insurance for the child; however, because the child was insured through TennCare, the mother simply kept the monies paid by the father. Here, no "unjust enrichment" argument can be made. The record reflects that, on June 7, 2017, Wife withdrew $2,300.00 from the parties' joint account in order to pay her credit card[10]; however, the record also reflects that, on June 4, 2017, Husband withdrew $5,000.00 for his own personal use.[11] Further, the payments and withdrawals referenced above were fully known and available to both parties as of June 8, 2017, the date upon which they executed the MDA and specifically contemplated for the division of their joint accounts. Based upon our own independent review of the record and the legal issue on appeal, we affirm the decision of the trial court that Husband was legally required to pay $3,000.00 for his June 2017 child support obligation and that he is not entitled to any credit against this amount.

---

[10] Specifically, the business ledger contained the following annotation for the $2,300.00 withdrawal: "Chase credit card (personal)".

[11] The annotation for this withdrawal: "Aaron Kemp (personal pay)".

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is hereby affirmed in all respects.

_____
ARNOLD B. GOLDIN, JUDGE