IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 21, 2016 Session

## AMANDA PETERS-ASBURY, ET AL. v. KNOXVILLE AREA TRANSIT, INC.

**Appeal from the Circuit Court for Knox County**
**No. 25612     William T. Ailor, Judge**

_____

**No. E2015-01816-COA-R3-CV – Filed August 8, 2016**
_____

This is a Governmental Tort Liability Act (GTLA) case involving a plaintiff who fractured her ankle when she fell exiting a bus owned and operated by the defendant. The plaintiff filed this lawsuit alleging that the defendant negligently caused her fall by dropping her off in a dangerous location and/or causing the bus to move as she exited. Following a non-jury trial, the trial court found that the defendant did not negligently drop the plaintiff off in an unsafe location but did negligently cause the bus to move as she exited. The trial court assessed liability against the defendant and awarded the plaintiff $101,969.30 in damages. The defendant timely appealed. Having thoroughly reviewed the record, we hold that the evidence adduced at trial does not support the trial court's finding that the bus was moving as the plaintiff exited. We therefore reverse the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., and THOMAS R. FRIERSON, II, JJ., joined.

Byron K. Lindberg, Nashville, Tennessee, for the appellant, Knoxville Area Transit, Inc.

John Chapman Duffy, Knoxville, Tennessee, for the appellees, Amanda Peters-Asbury and William Bradley Asbury.

# OPINION

## BACKGROUND AND PROCEDURAL HISTORY

In 2011, Amanda Peters-Asbury enrolled in classes for the fall semester at the University of Tennessee, Knoxville ("UT"). Ms. Peters-Asbury was 35 years old at the time; she was married and a mother of two. Due to a knee injury that she suffered years earlier, Ms. Peters-Asbury's mobility was restricted, and she needed assistance to get around on campus. Through an agreement with Knoxville Area Transit, Inc. ("KAT")[1], UT provided on-campus transportation for students with mobility restrictions on a bus called the "T-Access." KAT owned and operated the T-Access bus, and its use was limited to students who had registered with UT's Office of Disability Services. Before classes started, Ms. Peters-Asbury contacted the Office of Disability Services and obtained a pass to ride on the T-Access bus.

August 17, 2011 was Ms. Peters-Asbury's first day on UT's campus as a student. That morning, she decided to stop by the Office of Disability Services between classes to discuss an accommodations issue. She called the T-Access bus dispatcher and requested a ride from her location outside Buehler Hall to the Office of Disability Services. The bus, driven by KAT employee Michael Chigano, arrived shortly thereafter to pick her up.

UT's Office of Disability Services is located in Dunford Hall. Dunford Hall is on Volunteer Boulevard, which runs north and south on the east side of the building. The main entrance to Dunford Hall faces north and can be accessed using a long horseshoe-shaped driveway that loops in front of the building from Volunteer Boulevard. In addition to the main entrance, however, there is an entrance to the Office of Disability Services on the east side of Dunford Hall facing Volunteer Boulevard. A short, circular access road loops off Volunteer Boulevard near that side entrance.

When they arrived at Dunford Hall, Mr. Chigano pulled the bus off of Volunteer Boulevard onto the access road to drop Ms. Peters-Asbury off by the side entrance to the building where the Office of Disability Services is located. Mr. Chigano opened the bus door, and Ms. Peters-Asbury gathered her belongings and stood to exit the bus. As she took her first step off of the bus and onto the pavement, Ms. Peters-Asbury fell and fractured her right ankle.

---

[1] It is undisputed that KAT is a "governmental entity" as that term is defined in the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-102(3)(A).

For several months after the fall, Ms. Peters-Asbury was confined to a wheelchair while her doctor monitored her ankle's progress. She tried to continue attending classes but found that getting to class in the wheelchair was difficult and her pain medication made it difficult to focus. As a result, she withdrew from UT for the remainder of the semester. Even after she stopped using the wheelchair in December 2011, Ms. Peters-Asbury's mobility was severely limited. She had considerable difficulty climbing stairs, and her family eventually moved from their two-story townhouse to a single-level home. In March 2013, Ms. Peters-Asbury had surgery to repair ligament damage in the ankle.

In February 2012, Ms. Peters-Asbury, individually and as next friend of her son, Anthony Peters, and her husband, William Bradley Asbury (collectively, "Appellees"), filed a complaint in the Knox County Circuit Court against KAT. The complaint alleged that KAT's employee, Mr. Chigano, had acted negligently in dropping Ms. Peters-Asbury off at the side entrance to Dunford Hall, which they asserted was "an inappropriate and unreasonably dangerous location," rather than at the building's main entrance. The complaint alleged that KAT was therefore liable to Ms. Peters-Asbury for medical expenses, pain and suffering, and other economic losses. Additionally, the complaint alleged that KAT was liable to William Asbury for loss of spousal consortium, and to Anthony Peters for loss of parental consortium. KAT filed a motion for summary judgment in September 2012, which the trial court denied in March 2013. In September 2014, Appellees filed a motion seeking permission to amend their complaint. The trial court granted the motion, and Appellees filed an amended complaint in December 2014. The amended complaint reasserted the claims of Appellees' original complaint and alleged for the first time that Mr. Chigano negligently caused Ms. Peters-Asbury to fall by moving the bus forward as she was exiting the bus onto the pavement. Shortly thereafter, KAT filed an answer denying liability and raising Ms. Peters-Asbury's comparative fault as an affirmative defense.

The trial court conducted a non-jury trial over the course of two days in May 2015. At trial, a video of the incident produced in discovery by KAT was admitted into evidence.[2] The video, shot by a surveillance camera located at the front of the bus, shows Ms. Peters-Asbury stand to exit the bus, proceed down the steps to the bus door, and fall as she steps out of the bus onto the pavement. Because of the video's poor quality, the witnesses at trial vigorously disagreed whether or not the bus was moving as Ms. Peters-Asbury exited. Ms. Peters-Asbury and Mr. Chigano were the only witnesses with direct knowledge of the incident who testified at trial. Ms. Peters-Asbury testified that although she initially did not

---

[2] Videos introduced by the parties were marked as Exhibits 10 and 25 at trial. Because those videos are identical, we refer to them as a single video. Although Exhibit 25 includes a second video showing the area outside the front of the bus, that video ends as Ms. Peter-Asbury stands to exit the bus and is therefore not helpful in discerning whether the bus was moving as she exited. For the sake of simplicity, we decline to discuss that video here.

know whether the bus was moving as she exited, she suspected that it might have. She testified that she understood that the bus's movement caused her to fall after viewing the video during discovery. Conversely, Mr. Chigano testified that he never took his foot off of the brake after Ms. Peters-Asbury stood to exit and that the bus was not moving as she exited. Ms. Peters-Asbury, Mr. Asbury, and Mr. Chigano were each shown the video at trial. Not surprisingly, Ms. Peters-Asbury and Mr. Asbury both insisted that the video showed the bus moving, while Mr. Chigano maintained that the video showed the bus did not move. Appellees also introduced evidence aimed at showing that Mr. Chigano acted negligently in dropping Ms. Peters-Asbury off by the side entrance to Dunford Hall rather than the main entrance. Ms. Peters-Asbury testified that the main entrance was the safer of the two locations for mobility impaired students because the area around it was flat and clear, while the area around the side entrance was inclined and surrounded by landscaping. Although she testified that debris from the landscaping around the side entrance could have washed down to the area where she was dropped off, she admitted on cross-examination that she did not recall stepping on any debris when she fell.

The trial court announced its findings in an oral ruling on May 29, 2015. The trial court found no evidence that Ms. Peters-Asbury was dropped off in a dangerous location. However, based on its review of the video evidence, the trial court found that the bus was moving as Ms. Peters-Asbury exited, causing her to fall. The court stated:

> After reviewing the video several times, and the court has slowed down the video every time it has watched this video, and advanced it frame by frame to make its determination. In the court's opinion the video shows that the bus was moving at the time the plaintiff took her last step off the bus, causing the plaintiff to fall.

As a result, the trial court held that Ms. Peters-Asbury was entitled to a judgment against KAT in the amount of $101,969.30 ($28,848.80 for medical expenses, $8,720.50 for Fall 2011 tuition, $4,400 for living expenses, and $60,000 for pain and suffering). The trial court declined to award Mr. Asbury damages for loss of spousal consortium based on its finding that he was only "at home but a small percentage of the time." The trial court dismissed Appellees' claim that KAT was liable to Anthony Peters for loss of parental consortium. On June 9, 2015, the trial court entered a written order reflecting its judgment and incorporating its oral ruling by reference.

Thereafter, post-judgment motions were filed by both parties. On July 8, 2015, KAT filed a motion seeking to alter or amend the trial court's judgment on the basis of newly discovered evidence. In a memorandum filed along with the motion, KAT asserted that shortly after the trial, an employee promoted to the position of Safety Supervisor was

reviewing the files on his predecessor's computer and discovered an additional video of the incident erroneously saved in an unrelated folder. KAT asserted that the newly discovered video was of a higher quality than the video admitted at trial and clearly showed that the bus was not moving as Ms. Peters-Asbury exited. On June 25, 2015, Appellees filed a motion seeking $2,819.80 in discretionary costs incurred in the lawsuit. On July 9, 2015, Appellees filed a motion to alter or amend, asserting that the trial court committed a manifest error in declining to award Mr. Asbury damages for loss of spousal consortium. Finally, on July 24, 2015, Appellees filed a motion urging the court to impose sanctions against KAT for its failure to produce the newly discovered video during discovery. On September 1, 2015, following a hearing on the post-judgment motions, the trial court entered an order in which it granted Appellees' motion for discretionary costs and denied the remaining post-judgment motions. KAT timely filed a notice of appeal on September 24, 2015.

### ISSUES

KAT presents the following issues on appeal, restated from its brief:

1. Whether the trial court erred in finding that the bus was moving as Ms. Peters-Asbury exited.

2. Whether the trial court erred in not finding that Ms. Peters-Asbury's comparative negligence contributed to her injuries.

3. Whether the trial court erred in finding that Appellees proved a causal link between Ms. Peters-Asbury's August 2011 fall and March 2013 surgery.

4. Whether the trial court erred in denying KAT's motion to alter or amend.[3]

Appellees raise the following additional issues, restated from their brief:

1. Whether the trial court erred in not finding that Mr. Chigano negligently dropped Ms. Peters-Asbury off at a dangerous location.

2. Whether the trial court erred in calculating Ms. Peters-Asbury's non-economic damages.

---

[3] Counsel for KAT withdrew this issue at oral argument, and neither the motion nor the "newly discovered" video was considered on appeal.

3. Whether the trial court erred in declining to award Mr. Asbury damages for loss of spousal consortium.

4. Whether Tennessee law should be reformed to allow recovery for loss of parental consortium in personal injury actions.

## STANDARD OF REVIEW

Our standard of review of a trial court's factual findings in a non-jury trial is de novo upon the record of the trial court, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). When the trial judge has seen and heard witness testimony, we afford considerable deference to the trial court's findings of credibility and weight given to the testimony because trial courts are "uniquely positioned to observe the manner and demeanor of the witnesses." *King v. Sevier Cnty. Election Comm'n*, 282 S.W.3d 37, 41 (Tenn. Ct. App. 2008); *see Hughes v. Metro. Gov't of Nashville & Davidson Cnty.*, 340 S.W.3d 352, 360 (Tenn. 2011). However, when the trial court's findings are based on documentary evidence, the rationale underlying a more deferential standard of review is not implicated. *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000). When the trial court's findings are based solely on documentary evidence, such as the video recording in this case, the appellate court is in the same position as the trial court and is just as capable of reviewing the evidence and drawing its own conclusions. *Kelly v. Kelly*, 445 S.W.3d 685, 693 (Tenn. 2014); *Binette*, 33 S.W.3d at 217. Accordingly, in those limited circumstances, the appellate court is not required to extend deference to the trial court's findings. *See Kelly*, 445 S.W.3d at 693; *Mitchell v. Fayetteville Pub. Utils.*, 368 S.W.3d 442, 448 (Tenn. 2012); *Orrick v. Bestway Trucking, Inc.*, 184 S.W.3d 211, 216 (Tenn. 2006). Our standard of review of questions of law is de novo without a presumption of correctness. *Akers v. Prime Succession of Tenn., Inc.*, 387 S.W.3d 495, 501 (Tenn. 2012).

## ANALYSIS

To bring a successful negligence claim, a plaintiff must present evidence to establish each of the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal, causation. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 90 (Tenn. 2000). Our focus in this case is on the second element. At trial, Appellees presented evidence aimed at demonstrating that KAT's conduct fell below the applicable standard of care based on two theories: (1) that Mr. Chigano dropped Ms. Peters-Asbury off in a dangerous location, and (2) that the bus was moving as Ms. Peters-Asbury stepped off of it onto the pavement. The trial court found the

evidence insufficient to establish that Mr. Chigano dropped Ms. Peters-Asbury off in a dangerous location but found the evidence did establish that the bus was moving as Ms. Peters-Asbury stepped off of it onto the pavement. As such, the trial court's finding that the bus was moving was its sole basis for determining that KAT's conduct fell below the applicable standard of care.

KAT contends that the trial court erred in finding that its conduct fell below the applicable standard of care because the bus was not moving as Ms. Peters-Asbury exited. The trial court's finding that the bus was moving was based solely on video introduced at trial. Because we are equally capable of reviewing that video evidence, we review this issue de novo without a presumption that the trial court's finding is correct. *See Binette*, 33 S.W.3d at 217.

When it starts, the video, introduced into evidence at trial as Exhibits 10 and 25, is split into two frames–one on top of the other. The frames show the inside of the bus from two separate cameras located above the bus driver at the front of the bus. The bottom frame faces the back of the bus and shows Ms. Peters-Asbury seated directly behind the bus driver. The top frame faces the bus door and shows steps leading down to the bus door and a window directly behind the bus door. A parked car is visible through the window behind the bus door. The video does not have audio. As it begins, Ms. Peters-Asbury remains seated in the bottom frame; in the top frame, the front bumper of the parked car becomes visible through the bus door, and its front tire becomes fully visible through the window as the bus moves forward slightly then stops. After the bus stops, the bottom frame shows Ms. Peters-Asbury gather her belongings, and the top frame shows Mr. Chigano open the bus door. At this point in the video, the front bumper of the parked car is still visible in the top frame through the bus door. As Ms. Peters-Asbury stands to exit the bus and becomes visible in the top frame, the video zooms in on the top frame and the bottom frame is no longer visible.[4] The video, now displaying only the top frame, shows Ms. Peters-Asbury proceed down the steps to exit the bus. Although the quality of the video is regrettably poor at this point, Ms. Peters-Asbury's right ankle appears to roll over as she takes her first step onto the pavement. She falls out of the bus and to the right of the bus door. The video ends shortly after Ms. Peters-Asbury's fall.

The trial court did not articulate what specific aspect or detail of the video led it to find that the bus was moving as Ms. Peters-Asbury exited, and we do not see anything in the

---

[4] It appears that the video submitted at trial was actually a recording of a monitor showing the surveillance footage. This would explain why the video zooms in to exclude one frame and show only the frame depicting Ms. Peters-Asbury's fall. Despite its low quality, neither party disputes that the video is an accurate depiction of the events at issue.

video that supports that finding. The video zooms in on the bus door as Ms. Peters-Asbury steps off. As a result, our ability to reference stationary objects outside of the bus to discern movement is limited to those objects visible through the bus door. As Ms. Peters-Asbury steps onto the pavement, objects move across the top of the frame from right to left outside of the door. Despite the video's poor quality, it appears that these objects are the feet of a pedestrian walking past the bus. That determination is consistent with Ms. Peters-Asbury's testimony that the feet of a pedestrian who caught her as she fell are visible in the video. That movement in the frame is therefore not a stationary indicator that the bus was moving as Ms. Peters-Asbury exited. Moreover, the only other object visible through the bus door as Ms. Peters-Asbury exits is the shadow of the aforementioned parked car's front bumper in the top right corner of the frame. Although the shadow fades in and out of clarity, it does not move and remains in the same position relative to the bus as Ms. Peters-Asbury exits that it was in when Mr. Chigano stopped the bus to let her off. The constant position of the parked car's bumper in relation to the bus indicates to this court that the bus, in fact, did not move as Ms. Peters-Asbury exited.

The video introduced at trial does not support the trial court's finding that the bus was moving as Ms. Peters-Asbury exited. Rather, it is our view that the video supports a finding that the bus was not moving at that time. Moreover, there is no other evidence in the record to support the trial court's finding that the bus was moving. Of the two witnesses with direct knowledge of the incident, Ms. Peters-Asbury testified that she did not have any recollection of the bus moving independent from the video, and Mr. Chigano maintained that the bus was not moving. As such, we conclude that Appellees failed to present any evidence to establish that KAT's conduct fell below the standard of care.

Appellees argue that, even if the bus did not move as Ms. Peters-Asbury exited, KAT is still liable because the trial court erred in not finding that Mr. Chigano negligently dropped her off in an unsafe location. This argument is also without merit. The evidence Appellees presented at trial to demonstrate that the side entrance to Dunford Hall was more dangerous than the main entrance focused largely on the relative ease with which a mobility impaired person would be able to enter the building after being dropped off. For example, Appellees presented evidence to demonstrate that the area around the side entrance was inclined and surrounded by landscaping, while the area around the main entrance was flat and clear. However, there is no evidence to suggest that the incline or landscaping around the side entrance contributed to Ms. Peters-Asbury's fall in any way. Moreover, the side entrance to Dunford Hall is the entrance to the Office of Disability Services. When she called the T-Access bus dispatcher, Ms. Peters-Asbury did not request to be taken to Dunford Hall. Rather, she specifically requested to be taken to the Office of Disability Services. She repeated that specific request to Mr. Chigano when she boarded the bus. Although we are aware that Ms. Peters-Asbury had limited knowledge of the UT campus at the time, we are

not willing to hold that Mr. Chigano acted negligently by dropping Ms. Peters-Asbury off as close to her requested destination as possible under these circumstances.

Having thoroughly reviewed the record, we conclude that it does not contain evidence to support the imposition of liability based on either theory of KAT's negligence advanced by Appellees. There is no evidence that the bus was moving as Ms. Peters-Asbury exited, and there is no evidence that Mr. Chigano dropped Ms. Peters-Asbury off in a dangerous location. While we are not unsympathetic to the injuries Ms. Peters-Asbury has suffered, we are mindful that negligence is not "presumed by the mere happening of an injury or accident." *Friedenstab v. Short*, 174 S.W.3d 217, 219 (Tenn. Ct. App. 2004). The record before us simply does not contain evidence demonstrating that KAT's conduct fell below the applicable standard of care and is therefore insufficient to support the trial court's judgment. As such, we reverse the trial court's judgment against KAT in the amount of $101,969.30.

Finally, we must briefly address the issue of discretionary costs. At the conclusion of the trial, the trial court determined that Appellees were the prevailing party and ordered an award of $2,819.80 in costs and expenses against KAT. Tennessee Rule of Civil Procedure 54.04(2) empowers courts to award certain costs and expenses to a prevailing party. A party who prevails in the trial court but loses on appeal is no longer the prevailing party. *Progressive Casualty Ins., Co. v. Chapin*, 243 S.W.3d 553, 562 (Tenn. Ct. App. 2007). In light of our holding on appeal, Appellees are no longer the prevailing party. We therefore also reverse the trial court's judgment against KAT of $2,819.80 in discretionary costs.

In light of the foregoing, we pretermit discussion of the remaining issues raised by the parties.

## CONCLUSION

The judgment of the trial court is reversed, and this cause is remanded for any further proceedings necessary and consistent with this Opinion. Costs of this appeal are taxed to Appellees, Amanda Peters-Asbury, individually and as next friend of Anthony Peters, William Bradley Asbury, and their surety, for which execution may issue if necessary.

_____
ARNOLD B. GOLDIN, JUDGE