IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 3, 2025

**ELIJAH W. v. TENNESSEE DEPARTMENT OF
CHILDREN'S SERVICES[1]**

**Appeal from the Chancery Court for Roane County
No. 2016-132      Michael S. Pemberton, Judge**

———————————————————

**No. E2024-01679-COA-R3-CV**

———————————————————

This appeal involves judicial review of an administrative agency decision. The trial court found that the agency's decision lacked a foundation of substantial and material evidence and remanded the matter to the agency for further investigation or proceedings. Having determined that the trial court impermissibly re-weighed the evidence presented in this matter, we reverse the court's judgment and affirm the agency's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Reversed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which JEFFREY USMAN and VALERIE L. SMITH, JJ., joined.

Jonathan Skrmetti, Attorney General and Reporter; J. Matthew Rice, Solicitor General; Amber L. Barker, Senior Assistant Attorney General; and Mara L. Cunningham, Assistant Attorney General, for the appellant, Tennessee Department of Children's Services.[2]

**OPINION**

I.  Factual and Procedural History

On November 9, 2016, the appellee, Elijah W. ("Petitioner"), filed a petition for judicial review in the Roane County Chancery Court ("trial court"), seeking review of a

---

[1] In cases involving minor children, such as the abuse victim herein, it is the policy of this Court to redact the parties' full names in order to protect the child.

[2] Elijah W. did not file a brief in this matter. Accordingly, the appeal was submitted to this Court based solely on the appellate record and the appellant's brief.

"Final Order" entered by the Tennessee Department of Children's Services ("DCS") on September 9, 2016.[3] Petitioner asserted that DCS had substantiated him as a perpetrator of abuse and had placed his name on the Tennessee Department of Health's Abuse Registry ("the Registry"). According to Petitioner, having his name placed on the Registry would severely limit his ability to obtain employment in the future. Petitioner denied the abuse allegations and asserted that Tennessee Code Annotated § 68-11-1003, the statute concerning maintenance of the Registry, was unconstitutional on its face and resulted in a deprivation of his due process rights. Petitioner sought reversal of the Final Order and removal of his name from the Registry.

On December 22, 2016, DCS requested that the trial court allow it to file the administrative record under seal and enter a protective order "to protect the interests of [Petitioner] and others involved." The trial court subsequently entered an agreed protective order, finding that information disclosed by DCS was confidential pursuant to Tennessee law. The court therefore directed that all documents be filed under seal.

The trial court entered an order on October 9, 2024. In that order, the court reviewed the evidence contained in the administrative record, noting the standard of review set forth in Tennessee Code Annotated § 4-5-322 concerning review of administrative agency decisions. The court found in its analysis that DCS had "rel[ied] on [the alleged abuse victim] for the parts of her testimony that help it, but then complete[ly] disregard[ed] the portions that do not, all the while arguing that [she] was credible." The court additionally found "gaps" in the evidence that DCS had presented. Although the court found that the victim "was credible as to whether she has been the subject of exposure to sexual material, at a minimum," and that she had knowledge of body parts and sexual acts that was "disgustingly accurate," the court found that substantial and material evidence did not exist to support the decision that Petitioner was the perpetrator of the victim's abuse. The court therefore remanded the matter to DCS for further proceedings or investigation. DCS timely appealed.

## II. Issue Presented

DCS presents one issue for this Court's review:

Whether the ALJ's decision upholding DCS's substantiation of Petitioner as a perpetrator of child sexual abuse was supported by substantial and material evidence.

---

[3] The initial petition was filed by Petitioner's father on his behalf because Petitioner was still a minor at that time. Petitioner attained the age of majority in 2019.

## III. Standard of Review

Concerning judicial review of the decision of an administrative agency, such decisions are reviewed pursuant to the standard found in Tennessee Code Annotated § 4-5-322(h) (West May 18, 2021, to current) of the Uniform Administrative Procedures Act ("UAPA"), which provides in pertinent part:

(h)    The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

    (1)    In violation of constitutional or statutory provisions;

    (2)    In excess of the statutory authority of the agency;

    (3)    Made upon unlawful procedure;

    (4)    Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

    (5)(A)(i)    Except as provided in subdivision (h)(5)(B), unsupported by evidence that is both substantial and material in the light of the entire record;

        (ii)    In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact;

    (5)(B)(i)    Unsupported by a preponderance of the evidence in light of the entire record, if the administrative findings, inferences, conclusions, or decisions were made by a board, council, committee, agency, or regulatory program created pursuant to chapters 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, 17, 18, 19, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31 of title 63;

        (ii)    In determining whether the administrative findings, inferences, conclusions, or decisions are supported by a preponderance of the evidence, the court shall take into account whatever in the record fairly detracts from its

weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

As our Supreme Court has clarified:

This narrow standard of review, as opposed to the broader standard of review applied in other appeals, reflects the general principle that courts should defer to decisions of administrative agencies when they are acting within their area of specialized knowledge, experience, and expertise. Courts do not review questions of fact de novo and, therefore, do not second-guess the agency as to the weight of the evidence. This is true even if the evidence could support a different result.

The Act makes clear that a reviewing court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. Tenn. Code Ann. § 4-5-322(h)(5)(B). An appellate court applies the same limited standard of review as the trial court. *Davis v. Shelby Cnty. Sheriff's Dep't*, 278 S.W.3d 256, 264 (Tenn. 2009); *Ware v. Greene*, 984 S.W.2d 610, 614 (Tenn. Ct. App. 1998).

A decision of an administrative agency is arbitrary or capricious when there is no substantial and material evidence supporting the decision. The statute does not define "substantial and material evidence," but it is less than a preponderance of the evidence, and more than a "scintilla or glimmer" of evidence. A decision with evidentiary support can be arbitrary or capricious if it amounts to a clear error in judgment. A decision is arbitrary or capricious if it "is not based on any course of reasoning or exercise of judgment, or . . . disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion." [*City of Memphis v.*] *Civil Serv. Comm'n*, 216 S.W.3d [311,] 316 [(Tenn. 2007)] (quoting *Jackson Mobilphone Co.* [*v. Tenn. Pub. Serv. Comm'n*], 876 S.W.2d [106,] 111 [(Tenn. Ct. App. 1993)]).

*StarLink Logistics Inc. v. ACC, LLC*, 494 S.W.3d 659, 669-70 (Tenn. 2016) (other internal citations omitted).

IV. Trial Court's Determination of Lack of Substantial and Material Evidence

The trial court reviewed the administrative record and determined that substantial and material evidence did not exist to support the decision that Petitioner was the perpetrator of the victim's abuse. On appeal, DCS argues that the trial court erred in this determination because the administrative record contained "'proof of one or more' listed

validation factors 'linking the abusive act(s) to the alleged perpetrator.'" *See* Tenn. Comp. R. & Regs. 0250-07-09-.05(1)(a)-(h).

The version of the Rules of the Tennessee Department of Children's Services, *see* Tenn. Comp. R. & Regs. 0250-07-09-.01 through .11 (2006), as they existed at the time of the underlying administrative proceedings, defined how DCS identified cases wherein child abuse or neglect was "indicated" or "substantiated" and how DCS determined whether information regarding the identity and other information concerning alleged perpetrators of such abuse or neglect could be released "to organizations or persons." *See* Tenn. Comp. R. & Regs. 0250-07-09-.01, .02.[4] The rule at issue, 0250-07-09-.05, provided:

> (1) A report made against an alleged perpetrator shall be classified as "indicated if the preponderance of the evidence, in light of the entire record, proves that the individual committed abuse, severe child abuse, child sexual abuse, or neglect. Proof of one or more of the following factors, linking the abusive act(s) to the alleged perpetrator, may constitute a preponderance of the evidence:
>
> (a) Medical and/or psychological information from a licensed physician, medical center, or other treatment professional, that substantiates that physical abuse, sexual abuse, or severe physical abuse occurred;
>
> (b) An admission by the perpetrator;
>
> (c) The statement of a credible witness or witnesses to the abusive or neglectful act;
>
> (d) The child victim's statement that the abuse occurred;
>
> (e) Physiological indicators or signs of abuse or neglect, including, but not limited to, cuts, bruises, burns, broken bones or medically diagnosed physical conditions;
>
> (f) Physical evidence that could impact the classification decision:
>
> (g) The existence of behavioral patterns that may be indicative of child abuse/neglect and corroborates other evidence of abuse,

---

[4] The rules were amended effective January 4, 2018. In some instances, the rules appear to use the term, "substantiated," interchangeably with the term, "indicated," and the terms appear to have the same meaning.

severe child abuse, child sexual abuse, or neglect should be examined;

(h)     The existence of circumstantial evidence linking the alleged perpetrator to the abusive or neglectful act(s) (e.g., child was in care of the alleged perpetrator at the time the abuse occurred and no other reasonable explanation of the cause of the abuse exists in the record).

The administrative law judge ("ALJ") who presided over the DCS proceedings conducted a hearing on July 19, 2016, and entered an order on August 24, 2016, finding that DCS had presented sufficient evidence that Petitioner was the substantiated perpetrator of child sexual abuse against the victim, his younger half-sister, A.A. The ALJ based her finding on validation factor (d), as listed above, because A.A. had made disclosures of "sexual acts between AA and" Petitioner during her forensic interview. Accordingly, based on the victim's forensic interview, the trial court found that her testimony "substantiated child sexual abuse occurred as a result of [Petitioner's] actions."

In making this determination, the ALJ reported that Petitioner, who was fourteen at the time of the hearing, had been living with his father following his parents' divorce. Petitioner sometimes visited the home of his mother, who had remarried and had another child, A.A., with her current husband. The ALJ reported that the instances of abuse occurred when Petitioner was visiting his mother's home.

A forensic interview of A.A. had been conducted on June 4, 2015, when she was six years old. According to the ALJ, A.A. had reported during the interview that Petitioner had shown A.A. his "private" and had described what she meant by that term and correctly identified "the position of the male penis" and "her vagina." In addition, A.A. had described Petitioner's penis, stated that he had pubic hair, and described various sexual acts in which she and Petitioner had engaged. A.A. further stated during the interview that she had watched sexually explicit material on the internet, both on her own and with Petitioner. A.A. reported that these instances of abuse occurred between Christmas 2013 and Easter 2014. A.A. would have been five years old at that time.

The ALJ related that Petitioner had denied A.A.'s allegations. Petitioner had testified that he was thirteen years old at Christmas 2013 and that he had no pubic hair at that time. Petitioner had also denied looking at sexually explicit material. Petitioner testified that problems existed between him and his stepfather but that his stepfather was "very close" with A.A.

The ALJ indicated that Petitioner's grandfather ("Grandfather") had testified at the hearing, reporting that Petitioner often stayed at his home and that Grandfather routinely monitored Petitioner's electronic devices. Grandfather reported that Petitioner was modest

and polite around females. A family friend, H.B., testified that Petitioner had been on two family vacations with her and her two daughters and that H.B. had neither witnessed any inappropriate behavior by Petitioner nor been given reason to doubt his truthfulness.

The ALJ acknowledged that Dr. Peter B. Young, a psychologist who had been treating Petitioner for the last year, had also testified. According to the ALJ, Dr. Young reported that Petitioner had denied the allegations of abuse. Dr. Young opined that "deceit will be revealed by [] behavior and mannerisms" and stated that he had not observed anything that would indicate that Petitioner was a sexual perpetrator. Although Dr. Young had not interviewed A.A., he questioned whether the memory of such a young child was accurate.

When analyzing the evidence, the ALJ noted:

> Although there was testimony the relationship between [Petitioner] and the step-father [was] strained, there was no proof offered that the step-father did influence AA to make these allegations. An examination of the forensic interview itself shows that AA makes additional disclosures regarding her own behavior and that she in no way implicates [Petitioner] in those actions. She gives details of events, times, physical attributes and describes sexual acts with [Petitioner].

> Dr. Young gave an opinion regarding whether [Petitioner] was a sexual perpetrator. However, the psychologist had not met with AA or reviewed any other evidence regarding the allegations. Further, he testified most of the focus was on the relationship between [Petitioner] and his step-father.

> There is no proof that AA manufactured the allegations and no proof as to a motive for making false allegations. Validation Factor (d) is found to be met.

The ALJ concluded that "the evidence presented at trial meets the required burden of a preponderance of the evidence and does support the finding that [Petitioner] is the indicated perpetrator in a validated case of sexual abuse regarding AA." Petitioner subsequently sought judicial review of the ALJ's determination by the trial court.

On appeal, after reviewing the administrative record filed in this matter, the trial court entered an order on October 9, 2024. In that order, the court noted that "the only proof of the abuse was from the video-taped forensic interview of A.A." The court reviewed the video recording of A.A.'s forensic interview and recounted A.A.'s descriptions of the abuse, which were quite detailed. The court reported that A.A.'s older half-sister, who was Petitioner's stepsister, had also been interviewed but had not

corroborated A.A.'s allegations. The court also noted that although A.A.'s parents had reportedly examined her electronic devices and found nothing inappropriate, DCS had not examined those devices.

The trial court stated that Petitioner had testified and had denied A.A.'s allegations "in toto." The court noted that Petitioner had also stated that he only visited his mother's home sporadically and utilized his own bedroom during those visits. Petitioner reported that A.A. slept in her mother's room at the other end of the home. The court further recited Grandfather's testimony that Petitioner had stayed with Grandfather often during the relevant time period and that Grandfather routinely monitored Petitioner's electronics and had never found anything inappropriate thereon.

The trial court recounted Dr. Young's testimony at some length, including that Dr. Young had extensive experience working with children and that Dr. Young had "served as a court-appointed expert on numerous occasions to evaluate alleged sex abuse involving children." Dr. Young began seeing Petitioner around July 2015 and saw him "a couple of times per month" during the ensuing year leading up to the DCS hearing. The court recited Dr. Young's testimony that he believed Petitioner had been truthful with him during his sessions, including that Petitioner had not engaged in any inappropriate behavior with A.A. Dr. Young stated that there was nothing about Petitioner to indicate that he was deceitful or a perpetrator of sexual abuse.

The trial court acknowledged that Dr. Young had not evaluated A.A. and thus could not opine regarding her veracity. However, the court noted Dr. Young's opinion that a six-year-old's memory was "very poor" and that a young child's ability to recount something that happened two years prior at a very young age would be uncertain. Dr. Young also opined that it was not unusual for young children who had been exposed to pornography to project what they saw onto other people.

With respect to Dr. Young's testimony, the trial court further stated:

> [T]he order discounts the opinion of Dr. Young because he had not met with A.A., nor had he reviewed any of the evidence regarding the allegations. This Court would simply note that there was no evidence other than the forensic interview of A.A. for Dr. Young to review. Next, the [ALJ] seemingly concludes that Dr. Young did not spend enough time with [Petitioner] on the issue of whether the sexual abuse occurred, stating that "most of his focus was on the relationship between [Petitioner] and his stepfather." However, the Order is notably silent as to Dr. Young's experience in the field and does not mention any of the facts that give rise to his conclusion that [Petitioner] did not commit the abuse and gives no credence to his opinion that [Petitioner] did not sexually abuse A.A. In other words, the Order seems to entirely discount Dr. Young's testimony.

The trial court articulated that after watching the videotaped forensic interview, "the extent of detail and spontaneity provided by A.A. convinced the Court that nobody could have coached this child to speak as she did during the interview." The court also noted that A.A. did not appear to be "inhibited in any way." Despite this, the trial court found inconsistencies in A.A.'s interview.

For example, the trial court cited A.A.'s allegations that A.A. and Petitioner watched pornography together and that A.A. had recorded pornographic videos. The court stated that A.A.'s mother had examined A.A.'s electronic device and found no evidence of this. The court found it "concerning" that "[o]ther than A.A.'s mother checking one (or maybe more?) of the devices, the record is devoid of a thorough and professional search of the subject devices." The court also cited concern with A.A.'s allegation that her older half-sister had likewise been the victim of inappropriate sexual contact with Petitioner because the half-sister had failed to corroborate that allegation. The trial court further expressed dissatisfaction with DCS's failure to investigate whether Petitioner had hair on his stomach and genitalia at age twelve, as A.A. reported.

In its findings, the trial court reiterated that it was "absolutely convinced that A.A. had been exposed to inappropriate sexual materials" and that "words were not put in her mouth" for the forensic interview. The court further expressed a high degree of certainty that A.A. had been subjected to sexual abuse by a male. However, the court also noted that Petitioner had denied the abuse and that an expert witness had testified that Petitioner was not a sexual perpetrator. Accordingly, the court stated that it "need[ed to] know whether [Petitioner] had hair on his testicles and hair on his stomach during the relevant time period and will remand for that purpose."

The trial court rejected DCS's contention that the ALJ had implicitly found A.A. credible and Petitioner not credible. The court found that the cases upon which DCS had relied concerning this position—*Richards v. Liberty Mut. Ins. Co.*, 70 S.W.3d 729, 733-34 (Tenn. 2002), and *Copeland v. Tenn. Dep't of Corr.*, No. M2021-01557-COA-R3-CV, 2022 WL 17368978, at *9 (Tenn. Ct. App. 2022)—were distinguishable because in those cases, either the accuser or an eyewitness testified live and was subject to cross-examination, which was not the case at the DCS hearing in this matter. The court therefore expressed its unwillingness to find Petitioner not credible.

The trial court concluded:

[T]his court will make a finding that A.A. was credible as to whether she has been the subject of exposure to sexual material, at a minimum. This Court does not believe that a six-year-old could, or should, know the things that A.A. does. Her detail and description of body parts and the performance of oral sex were disgustingly accurate. However, whether A.A.'s knowledge is

- 9 -

due to [Petitioner] or whether her knowledge comes from another person or watching pornography on her own is an open question based upon the proof. With that said, there is one very important fact stated by A.A. that clearly indicates to this Court that she has been sexually abused. That fact [is] A.A. stated that her teeth had scraped [Petitioner's] penis during the performance of oral sex and that she apologized. That, to this court, is the most relevant fact that convinces this court that substantial and material evidence exist[s] that this child was sexually abused. The question then becomes whether substantial and material evidence exists to support the decision that [Petitioner] was the one who abused her. This Court is of the opinion that at this time [it] does not and that is the purpose of the remand.

On appeal, our standard of review is the same as that of the trial court. *StarLink Logistics*, 494 S.W.3d at 669. Accordingly, when examining a trial court's review of an administrative agency's decision, this Court should determine "whether or not the trial court properly applied the . . . standard of review" found in Tennessee Code Annotated § 4-5-322(h). *Jones v. Bureau of TennCare*, 94 S.W.3d 495, 501 (Tenn. Ct. App. 2002) (quoting *Papachristou v. Univ. of Tenn.*, 29 S.W.3d 487, 490 (Tenn. Ct. App. 2000)). As part of applying the narrow standard of review found in Tennessee Code Annotated § 4-5-322, neither this Court nor the trial court should "second-guess the agency as to the weight of the evidence" "even if the evidence could support a different result." *StarLink Logistics*, 494 S.W.3d at 669. Upon review, we determine that the trial court misapplied this standard of review, erroneously substituting its judgment for that of the ALJ concerning the weight of the evidence.

We note that A.A. did not testify in person regarding the abuse allegations; rather, her testimony was received via a video recording of her forensic interview. As such, this Court and the trial court are able to assess her credibility without giving deference to the ALJ's credibility determination. *See In re A.H.*, No. M2022-01066-COA-R3-JV, 2023 WL 4284968, at *8 (Tenn. Ct. App. June 30, 2023) ("[W]e are 'not required to give similar deference to a trial court's findings of fact based on documentary evidence such as . . . [a] video recording[]'" (quoting *Kelly v. Kelly*, 445 S.W.3d 685, 693 (Tenn. 2014)); *see also Peters-Asbury v. Knoxville Area Transit, Inc.*, 544 S.W.3d 354, 359 (Tenn. Ct. App. 2016) ("When the trial court's findings are based solely on documentary evidence, such as the video recording in this case, the appellate court is in the same position as the trial court and is just as capable of reviewing the evidence and drawing its own conclusions."). The ALJ and the trial court both found A.A.'s abuse allegations to be credible, and we agree.[5]

---

[5] Although the ALJ's credibility findings were implied rather than express, her ultimate determination makes clear that she credited A.A.'s allegations. *See Richards v. Liberty Mut. Ins. Co.*, 70 S.W.3d 729, 733-34 (Tenn. 2002). We will address implicit credibility determinations later in this Opinion.

Our review of the video recording of A.A.'s forensic interview demonstrates that A.A. made spontaneous disclosures regarding both Petitioner's sexual behavior with her and her own sexual behavior that did not involve Petitioner. Accordingly, her disclosures did not solely implicate Petitioner; the disclosures implicated her as well. This fact supports the trustworthiness of the disclosures. Moreover, despite being very young, A.A. was able to describe male genitalia and the act of oral sex with accuracy and detail that should not be within the knowledge of a child her age. Although she reported being "curious" about and observing "naked" videos on the internet, both by herself and with Petitioner, her disclosures included physical details of sexual acts that would not necessarily have followed from simply watching such videos. This also lends credence to the trustworthiness of her statements. Importantly, A.A. solely identified Petitioner as the individual participating in sexual conduct with her. Accordingly, we agree with the determination by the ALJ and the trial court that there was substantial and material evidence in the record to support the conclusion that A.A. was the victim of sexual abuse.

The trial court diverged from the ALJ's opinion, however, with regard to whether the record contained substantial and material evidence demonstrating that Petitioner was the perpetrator of A.A.'s abuse. In doing so, the trial court specifically emphasized issues with reference to (1) whether the ALJ's implicit finding concerning Petitioner's denial of the allegations should be given deference on appeal, (2) whether the ALJ accorded sufficient weight to the testimony of Dr. Young, and (3) whether DCS should have presented other available or attainable evidence to corroborate A.A.'s testimony before substantiating Petitioner as a perpetrator. We will address each of these points in turn.

Concerning credibility, we reiterate that the ALJ made no specific credibility findings concerning either A.A.'s or Petitioner's testimony. However, in determining that the abuse allegations had substantiated Petitioner as the perpetrator of A.A.'s abuse, the ALJ implicitly afforded more credit to A.A.'s statements than to the testimony of Petitioner. As our Supreme Court has previously clarified:

[A] reviewing court must give "considerable deference" to the trial judge with regard to oral, in-court testimony as it is the trial judge who has viewed the witnesses and heard the testimony. This is particularly true when the credibility of the witnesses and the weight assigned to their testimony are critical issues. Moreover, because there is no requirement that a trial court make express findings of fact regarding a witness's credibility, the absence of such findings does not alter the applicable standard of review. Indeed, the trial court's findings with respect to credibility and the weight of the evidence, as in the present case, generally may be inferred from the manner in which the trial court resolves conflicts in the testimony and decides the case.

- 11 -

*Richards v. Liberty Mut. Ins. Co.*, 70 S.W.3d 729, 733-34 (Tenn. 2002) (emphasis added) (internal citations omitted). *See Copeland v. Tenn. Dep't of Corr.*, No. M2021-01557-COA-R3-CV, 2022 WL 17368978, at *9 (Tenn. Ct. App. Dec. 2, 2022) ("Although the Board did not explicitly make a credibility determination in its written order, its findings of fact and conclusions of law imply that it credited [one witness's] testimony over [another witness's testimony].").

In this matter, the ALJ was able to "observe the witnesses' demeanor and hear in-court testimony" with respect to the testimony of Petitioner, Dr. Young, Grandfather, and H.B. *See In re A.H.*, 2023 WL 4284968, at *8. Accordingly, we must afford great weight to the ALJ's findings regarding those witnesses. Although the testimonies of A.A. and Petitioner were in conflict regarding whether Petitioner was the perpetrator of A.A.'s abuse, the ALJ resolved that conflict in favor of A.A., implicitly finding Petitioner's denial not credible. We defer to that finding.

Respecting whether the ALJ afforded sufficient weight to the testimony of Dr. Young, the trial court expressed dissatisfaction that the ALJ had "discount[ed] the opinion of Dr. Young" because he had not met with A.A. or reviewed any of the other evidence regarding the allegations, namely the forensic interview video. The court further criticized the ALJ's "silence" in the order regarding Dr. Young's experience, the time Dr. Young had spent with Petitioner, and "the facts that give rise to [Dr. Young's] conclusion that [Petitioner] did not commit the abuse." As the trial court concluded, "the Order seems to entirely discount Dr. Young's testimony."

This Court has previously addressed the review of expert testimony presented in administrative proceedings:

> The admissibility and use of expert testimony is governed by Article VII of the Tennessee Rules of Evidence, specifically Rule 702. These rules also apply in administrative hearings brought under the UAPA. *Martin v. Sizemore*, 78 S.W.3d 249, 273 (Tenn. Ct. App. 2001). It is well established that the trier of fact may disregard expert testimony. *Billingsley v. Waggener*, No. M2001-01015-COA-R3-CV, 2002 WL 12990, at *5 (Tenn. Ct. App. Jan. 4, 2002) (citing *England v. Burns Stone Company, Inc.*, 874 S.W.2d 32, 38 (Tenn. Ct. App. 1993). "Expert testimony is not ordinarily conclusive, but is purely advisory in character, and the trier of fact may place whatever weight it chooses upon such testimony and may retract it if it finds that it is inconsistent with the facts or otherwise unreasonable." *England v. Burns Stone Company, Inc.*, 874 S.W.2d 32, 38 (Tenn. Ct. App. 1993) (citing *Gibson v. Ferguson*, 562 S.W.2d 188, 190 (Tenn. 1976)).

> The administrative judge determined that the testimony of neither expert assisted the court in rendering its decision, and afforded more weight

to the in-car video recording. As the finder of fact, the administrative judge was free to do so. The resolution of the factual issues in this case did not require expert testimony, and we discern no error in the administrative judge's decision to disregard the opinions.

*Morgan v. Tenn. Civil Serv. Comm'n*, No. M2016-00034-COA-R3-CV, 2017 WL 781702, at *5-6 (Tenn. Ct. App. Feb. 28, 2017) (footnotes omitted). Likewise, here, the resolution of the factual issues did not require expert testimony, and the ALJ was free to assign whatever weight she chose to Dr. Young's testimony and opinions. We therefore disagree with the trial court's criticism of the ALJ's "discounting" of the expert testimony.

Finally, with respect to the trial court's opinion that DCS should have presented other available or attainable evidence to corroborate A.A.'s testimony before substantiating Petitioner as a perpetrator, we must again disagree. As this Court has stated, "lack of eyewitness testimony and physical evidence is not fatal to [] allegations of abuse." *In re A.H.*, 2023 WL 4284968, at *5. *See In re Madison M.*, No. M2013-02561-COA-R3-JV, 2014 WL 4792793, at *14 (Tenn. Ct. App. Sept. 25, 2014) (determining that the child's statements regarding sexual abuse were "not rendered untrustworthy simply because there was no eyewitness to the abuse, and no physical evidence to confirm that it occurred."). The trial court questioned DCS's failure to investigate whether Petitioner had body hair on his stomach and groin area when he was twelve years old, as A.A. reported, or why DCS did not examine A.A.'s electronic devices to determine whether her allegations concerning pornography were true.[6]

We reiterate that in order to find the decision of an administrative agency arbitrary or capricious, we would need to find that there was no substantial and material evidence supporting the decision. *See* Tenn. Code Ann. § 4-5-322(h); *StarLink Logistics*, 494 S.W.3d at 669-70. The Tennessee Supreme Court has defined "substantial and material evidence" as "less than a preponderance of the evidence, and more than a 'scintilla or glimmer' of evidence." *StarLink Logistics*, 494 S.W.3d at 669-70. Based on A.A.'s testimony, which the ALJ, the trial court, and this Court have all found to be credible, we conclude that substantial and material evidence existed to support the ALJ's determination.

Although we likewise believe that DCS could have made greater efforts to investigate the facts stated by A.A. and to present those facts to the ALJ, it is not our province to "second-guess the agency as to the weight of the evidence," "even if the

---

[6] We note that even if these particular allegations were corroborated by other evidence, which is not necessary to find the allegations credible, the presence or absence of body hair on Petitioner or of pornography on A.A.'s electronic devices would not necessarily establish Petitioner as the perpetrator. A.A. testified that she watched pornography with Petitioner and by herself. In addition, despite the trial court's finding that A.A.'s devices were checked by her mother, the proof, by way of the DCS caseworker's testimony, was that the devices had been turned over to law enforcement when the disclosures were reported.

evidence could support a different result." *See StarLink Logistics*, 494 S.W.3d at 669; *see also Jackson Mobilphone Co., Inc. v. Tenn. Public Serv. Comm'n.*, 876 S.W.2d 106, 111 (Tenn. Ct. App. 1993) ("The court need not reweigh the evidence . . . . The evidence will be sufficient if it furnishes a reasonably sound factual basis for the decision being reviewed."). Having determined that the trial court impermissibly re-weighed the evidence presented in this matter, we reverse the court's decision and affirm the determination of the ALJ substantiating Petitioner as the perpetrator of A.A.'s abuse.

## V. Conclusion

For the foregoing reasons, we reverse the trial court's remand of this matter to the ALJ. We therefore affirm the ALJ's determination. Costs on appeal shall be assessed to the appellee, Elijah W.

s/Thomas R. Frierson, II

_____

THOMAS R. FRIERSON, II, JUDGE